# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COASTAL RANCHES CONSERVANCY,<br>    Plaintiff,<br><br>    v.<br><br>TONY TAVARES, in his official capacity as Director of the California Department of Transportation,<br>    Defendant. | 2:24-cv-00468-DSF-RAOx<br><br>Order GRANTING IN PART and DENYING IN PART Plaintiff's Motion for Summary Judgment; Order DENYING Defendant's Motion for Summary Judgment (Dkt. 48, 52) |

Plaintiff Coastal Ranches Conservancy brings this case against the Director of the California Department of Transportation, in his official capacity, (Caltrans) to remediate certain structures in Gaviota Creek, Santa Barbara County. These structures are alleged to result in "take" of endangered Southern California Steelhead in violation of the Endangered Species Act (ESA). Plaintiff also seeks a declaration that certain emergency activities by Caltrans resulted in take of steelhead in violation of the ESA. Both sides have filed summary judgment motions, most of which have little merit. The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. Background[1]

The Southern California Steelhead (steelhead) is an endangered population of steelhead listed under the Endangered Species Act (ESA). Plaintiff's Statement of Uncontroverted Facts (PSUF) ¶ 13. As relevant here, Gaviota Creek in Santa Barbara County can and does act as habitat for steelhead, at least during certain portions of their lifecycle.[2] See generally PSUF ¶¶ 37-52. Plaintiff is a non-profit organization formed for the purpose of protecting and improving the natural resources of Gaviota Creek. PSUF ¶ 1.

Caltrans has placed certain structures in Gaviota Creek (collectively "the Barriers") in conjunction with the construction and maintenance of U.S. Highway 101 through the area.[3] PSUF ¶¶ 20-22. The Barriers at issue are twelve grade control structures and two culverts inside the creek bed. There is no serious dispute that most, if not all, of the Barriers are more difficult for steelhead to pass than the natural creek bed, but the parties dispute the magnitude and

---

[1] The following facts are undisputed unless otherwise noted. Plaintiff's Statement of Uncontroverted Facts is generally cited for simplicity; this should not be interpreted as an acceptance of Plaintiff's version of events over Defendant's. To the extent certain facts are not mentioned in this Order, the Court has not specifically relied on them in reaching its decision. Except as stated elsewhere in this Order, the Court overrules the parties' objections. The Court has independently considered the admissibility of the evidence underlying the SUF and the SGI and has not considered facts that are irrelevant or otherwise based on inadmissible evidence.

[2] Steelhead are anadromous. They spend the majority of their life in the ocean but return to freshwater to reproduce. PSUF ¶¶ 9-10.

[3] Caltrans engages in a semantic argument around whether it "maintains" the Barriers. It contends that it essentially has done nothing with the Barriers since they were put in place long ago. However, it is not disputed that Caltrans constructed the Barriers and has the right to remove or modify them if necessary. It is also not disputed that Caltrans "maintains" the Barriers in the sense that it has kept them in place and not removed them from an area that it controls.

materiality of that impact. See PSUF ¶¶ 25-34 and Def. Responses. The parties also dispute the significance of two "Natural Barriers" in the creek. As the name suggests, the Natural Barriers are natural features of Gaviota Creek that inhibit steelhead migration upstream. PSUF ¶ 58. The Natural Barriers are downstream of many of the (Caltrans) Barriers. Caltrans has taken the position that steelhead cannot pass the Natural Barriers. Therefore, according to Caltrans, the upstream Barriers are immaterial and do not, themselves, result in steelhead take. Plaintiff concedes that the Natural Barriers make it more difficult for steelhead to migrate upstream but disputes the magnitude and materiality of the impediment. Plaintiff denies that the Natural Barriers completely block steelhead upstream movement. See PSUF ¶ 59.

Caltrans has recently engaged in a "Scour Repair Project" within the creek that resulted in the temporary diversion and dewatering of the creek. PSUF ¶¶ 65, 68. This Project received formal federal regulatory approval from the Army Corps of Engineers (ACOE) in the form of a water permit. PSUF ¶ 74. Caltrans admits that at least three steelhead were killed and sixteen others relocated during this project.[4] See PSUF ¶¶ 69-70. Plaintiff argues that the Project also caused longer-term negative impact to the habitat, primarily through alteration of the vegetation in the creek bed. Plaintiff claims that Caltrans was not authorized to "take" steelhead during the Project because it had not obtained any form of authorization to do so recognized under the ESA. Caltrans contends that because the Project was an emergency, it was allowed to engage in a streamlined form of consultation with the National Marine Fisheries Service (NMFS). It further contends that the ACOE's incorporation of part of the NMFS's response to this consultation is sufficient to authorize "take" under the ESA.

---

[4] Caltrans admits that three dead steelhead were discovered during the project but does not admit that its project was the cause of the steelhead deaths.

Both parties have now moved for summary judgment on both of Plaintiff's claims. With the exception of the issue of standing, the issues in this case are inappropriate for resolution on summary judgment.

## II. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322.

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. Id. at 250-51. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury . . . could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict . . . ." Id. at 252. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1161 (9th Cir. 1992). Summary judgment is improper 'where divergent ultimate inferences may reasonably be drawn from the undisputed facts.'" Fresno Motors v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014). Instead, "the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (internal quotation marks and ellipsis omitted).

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." Fair Hous. Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and brackets omitted). In doing so, the Court must consider the evidence submitted in support of both motions before ruling on each of them. Id.

### III. Analysis

A.     **Standing**

Caltrans first argues that Plaintiff lacks standing to bring its claims. The Court rejects this argument and finds that Plaintiff has associational standing.

"An organization has standing to sue on behalf of its members where its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Save Bull Trout v. Williams, 51 F.4th 1101, 1106 (9th Cir. 2022) (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs., 528 U.S. 167, 181 (2000)) (internal quotation marks omitted). An individual member would have standing if "(1) [the member] suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of

5

the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." See id.

There is no dispute that the interests in this case are germane to Plaintiff's purpose and mission. Caltrans also does not argue that a member with individual standing would be required to be joined to obtain the relief sought.

Plaintiff has at least one member who meets the requirements for individual standing. Doug Campbell testified that he has for many years fished, camped, and owned land in the Gaviota Creek Area. He has observed the steelhead population decline in that period and that reduces his use and enjoyment of the area.[5] PSUF ¶¶ 5-8. This is sufficient to satisfy the first standing prong. See Save Bull Trout, 51 F.4th at 1106. To the degree Plaintiff's claims have merit, Caltrans' acts can be fairly traced to this injury. This satisfies the second prong.

Caltrans primarily challenges the final prong of the analysis – redressability. It makes the sweeping argument that, due to separation of powers, the Court cannot require Caltrans to take action to remedy the Barriers. This is unsupported and plainly incorrect. Courts regularly order government agencies to remedy violations of federal law. The redressability requirement may not be met if the only potential redress for the alleged wrong is a sweeping revamp of executive priorities and resources. See Juliana v. United States, 947 F.3d 1159 (9th Cir. 2020) ("As the opinions of their experts make plain, any effective plan would necessarily require a host of complex policy decisions entrusted, for better or worse, to the wisdom and discretion of the executive and legislative branches."). But in this case, Plaintiff's claims involve specific, limited barriers that can be addressed through discrete agency actions.

---

[5] Caltrans raises specious objections to Campbell's declaration, which are overruled. Campbell's testimony is based on his own personal acts, observations, and subjective experience. It is obviously admissible.

That said, the Court's equitable powers are not unlimited, and any injunction should provide discretion to the enjoined agency on how to best approach elimination of the ESA violation while maintaining effectiveness of its operations. See Firebaugh Canal Co. v. United States, 203 F.3d 568, 578 (9th Cir. 2000) ("Although the district court can compel the Department of Interior to provide drainage service as mandated by the San Luis Act, the district court cannot eliminate agency discretion as to how it satisfies the drainage requirement."); Sierra Club v. Yeutter, 926 F.2d 429, 440 (5th Cir. 1991) ("However, the court's injunction in essence fashioned the plan, dictating the principal feature of all significant steps the USFS must take with regard to the RCW. . . . The court's injunction eviscerated the consultation process by effectively dictating the results of that process. Thus, the court exceeded its authority to enjoin violations of the ESA."); see also San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation Dist., 49 F.4th 1242, 1250 (9th Cir. 2022) ("We also need not, and do not, reach the question of how the Agencies might be required to exercise their discretion in order to come into compliance with the requirements of the Endangered Species Act. We instead leave those issues for consideration by the district court in the first instance.").[6]

### B. Merits

As for the underlying merits, disputed questions of material fact abound. The parties, supported by expert testimony, differ on their views of the significance of the various barriers and even dispute if some of the barriers could have any relevance at all to the steelhead population – *e.g.*, the issue of barriers upstream of the Natural Barriers. The Court cannot say that any given barrier does or does not result in take of steelhead given the extent of the disputes.

---

[6] While other possibilities are not foreclosed, it is likely that any injunction in this case would establish a collaborative process involving Plaintiff, Caltrans, and other interested agencies through which a definite plan could be established for reducing or eliminating the impact of the Barriers on steelhead in the creek.

The disputes surrounding the Scour Repair Project are more limited, but nonetheless neither party is entitled to summary judgment on the merits. If nothing else, neither party has proven that Caltrans did or did not comply with any requirements imposed by NMFS after the emergency consultation. The Court rejects both Plaintiff's apparent view that take can never be authorized by emergency procedures and Caltrans's apparent position that no explicit NMFS take authorization is required as a part of ESA emergency procedures.[7] It appears to the Court that the June 2, 2023 e-mail from NMFS to the ACOE and forwarded to Caltrans, Dkt. 53-1 at ECF p. 54, may satisfy 16 U.S.C. § 1536(b)(4).[8] Caltrans fails to argue this point explicitly and, to the degree it relies on any take authorization, instead relies on the incorporation of some of NMFS's comments into the ACOE's water permit. For its part, Plaintiff barely engages with the substance of the NMFS e-mail at all except to imply that no NMFS written statement can satisfy § 1536(b)(4) unless a formal biological statement has been prepared. Plaintiff fails to provide any support for this proposition other than a citation to § 1536(b)(4) – which does not say, or even imply, this. It may be that further examination of the statutory scheme, as a whole, could support Plaintiff's position, but it is not the Court's job to make that argument. In the Court's view, it is reasonable to start from the position that there is probably *some* way to authorize incidental take for emergency projects. The most obvious way would be a statement satisfying the requirements of § 1536(b)(4) that was arrived at using more informal, expedited procedures. Nonetheless,

---

[7] It is not clear that Defendant's position is quite this extreme. Sometimes Defendant suggests that the requirements passed on by the ACOE in its water permit are the relevant authorization for incidental take, despite the permit's clear and explicit disclaimer of any take authorization. Defendant also makes no effort to show how the permit would satisfy any of the statutory provisions that might excuse take of an endangered species.

[8] See also 16 U.S.C. § 1536(o)(2) ("any taking that is in compliance with the terms and conditions specified in a written statement provided under subsection (b)(4)(iv) shall not be considered to be a prohibited taking of the species concerned.").

neither party's arguments provide the Court with the confidence necessary to make this legal determination at this time.

## IV. Conclusion

Plaintiff's motion for summary judgment is GRANTED with respect to Plaintiff's standing. It is DENIED in all other respects. Caltrans' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Date: January 24, 2025

Honorable Dale S. Fischer
United States District Judge